UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KAMBIS ANVAR and MICHELLE DRUM,<br>*Plaintiffs* | :<br>:<br>: |
| v. | :<br>: C.A. NO.: 1:19-cv-00523 |
| ELIZABETH M. TANNER, Director of Department of<br>Business Regulation, and PETER F. NERONHA,<br>Attorney General of Rhode Island,<br>*Defendants* | :<br>:<br>:<br>:<br>: |
| v. | :<br>: |
| RHODE ISLAND RESPONSIBLE BEVERAGE<br>ALCOHOL COALITION, INC.,<br>*Intervenor Defendant* | :<br>:<br>: |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS

Plaintiffs Kambis Anvar and Michelle Drum (together, "Plaintiffs") seek to dismantle Rhode Island's three-tier alcohol distribution system, alleging that Rhode Island's laws and regulations have deprived them of the ability to purchase from out-of-state retailers certain wines that are not available in Rhode Island.[1] Complaint, ECF 1. Discovery, including Plaintiffs' deposition testimony, establishes that Rhode Island's laws have done no such thing, and that Plaintiffs lack standing to pursue their claim because they have suffered no concrete or particularized injury in fact.

Pursuant to this Court's Order that "[q]ueuing up the issue of subject matter jurisdictions as soon as it is raised is the most efficient way to proceed," (Text Order docketed March 8, 2021), Defendants Elizabeth M. Tanner, in her official capacity as Director of the Rhode Island

---

[1] The U.S. Supreme Court has held that "the three-tier system itself is unquestionably legitimate." *Granholm v. Heald*, 544 U.S. 460, 489 (2005). Nonetheless, Plaintiffs seek to strike down a variety of statutes that would have the practical effect of destroying the State's three-tier system.

Department of Business Regulation ("DBR"), and Peter F. Neronha, in his official capacity as Rhode Island Attorney General (together, "State Defendants") and Intervenor-Defendant Rhode Island Responsible Beverage Alcohol Coalition, Inc. ("RIRBAC," and together with State Defendants, "Defendants") move to dismiss Plaintiffs' Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, because Plaintiffs lack standing to pursue their Commerce Cause challenge to the State's laws and regulations related to the direct shipment of wine from out-of-state retailers.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiffs' Complaint Tries To Establish Standing Based On Failed Attempts To Purchase From Out-of-State Retailers Wine Allegedly Unavailable in Rhode Island

Plaintiffs[2] filed suit on October 3, 2019, against State Defendants challenging the constitutionality of Rhode Island's laws and regulations related to the sale and shipment of wine from out-of-state retailers directly to Rhode Island residents and asserting a Commerce Clause violation.[3]  *See generally* Complaint, ECF No. 1.

The introductory paragraph of the Complaint alleges that Rhode Island law discriminates against "out-of-state wine retailers by preventing them from selling, delivering, and shipping wine to Rhode Island residents . . . ." *Id*. p. 1.  Neither Anvar nor Drum is a wine retailer.[4]  Thus, they cannot bring a claim on behalf of out-of-state retailers.

Instead, both are wine consumers.  The allegations in the Complaint that arguably relate to consumer standing assert that out-of-state retailers rebuffed Plaintiffs when they sought to

---

[2] Plaintiffs Vincent Colapietro and Michael Osean dismissed their claims with prejudice and are no longer participating in this action.
[3] Plaintiffs specifically challenge R.I. Gen. Laws §§ 3-4-8(a), 3-5-10, 3-5-11, 3-5-15, 3-5-17, 3-7-18 and 230 R.I. Admin Code 30-10-1.4.19(B)(1), 30-10-1.4-10(B), and 30-10-1.4.27.
[4] While Plaintiffs' counsel has bought many of these out-of-state retailer direct shipping cases throughout the country, this is the only one in which the plaintiffs do not include an out-of-state retailer.

purchase "many rare, unusual, and heavily allocated wines that are distributed in other states [and] are not stocked or sold by Rhode Island retailers, but are readily available from retailers located in Connecticut, New York and California." *Id.* at ¶ 19. They claim to have "contacted several out-of-state wine retailers either on the Internet or by telephone, including retailers located in Connecticut that provide home deliveries in the region, and attempted to buy wine and have it delivered to their Rhode Island residences, but have been refused." *Id*. at ¶ 18. Plaintiff Drum specifically alleges she "attempted to purchase wines from retailers outside Rhode Island, including online sales sites for K & L Wine Merchants in California and the Wine Library in New Jersey, and have that wine delivered to Rhode Island, but those orders have been declined." *Id*. at ¶ 5.

As set forth in greater detail below, Plaintiffs' deposition testimony told a different story; both testified that they contacted out-of-state retailers for the purpose of this lawsuit at the suggestion of their counsel, but not with any intention of purchasing wine. Nor could either Plaintiff identify even one of the alleged many rare, unusual, and allocated wines that they claim could not be found in Rhode Island.

    **B.**    <u>**Discovery Established Plaintiff Anvar's Lack of Standing**</u>

During his deposition, Anvar acknowledged that his attorney provided him with a list of wine retailers outside of Rhode Island, which he called to inquire whether they would ship to Rhode Island. *See* Exhibit A, Excerpts of Deposition Transcript of Kambis Anvar ("Anvar Depo.") at 18:1-20:25 ("Q: Why did you choose these three retailers to call and ask? A: They were on the last that I was given. There were five and I got in touch with three.") Anvar was not looking to purchase wine when he called. *Id.; see also id.* at 25:4-12 ("Q. And were you attempting to purchase wine from these entities? A. No. Q. These entities you called to inquire whether they would deliver; is that right? A. Right, yes. Q. And you weren't attempting to purchase wine from

3

them necessarily; right? A. Right."). Anvar's responses to the State Defendants' Interrogatories are consistent with that testimony. Plaintiff Anvar identified three Massachusetts retailers he contacted and indicated that they would not deliver wine to Rhode Island. Anvar did not identify a single wine he sought to actually purchase from these out-of-state retailers. *See* Exhibit B, Kambis Anvar Responses to Interrogatories.

Anvar's alleged knowledge about the unavailability of wines in Rhode Island is also second hand. *See* Anvar Depo. at 25:13-24 ("Q. Can you review your answer to Interrogatory Number 6, please. A. Okay. Q. Your answer says that, 'It's my understanding that there are many rare wines that are available out of state but not to Rhode Islanders.' How did you develop this understanding? A. After talking about the fact that wine can't be shipped here, I talked to a couple of people about experiences about that, including Scott [Summer], my lawyers, and that's how I learned about it."). Anvar himself is unaware of any wines that are not available in Rhode Island. *Id.* at 25:24-26:12 ("Q. Can you identify any of the rare wines that are available out of state but not to Rhode Islanders? A. No. Q. Have you tried to find what these rare wines are that are available out of state? A. No. Q. Now, your answer says that the wines are readily available to find by going on the internet. Can you explain where on the internet these can be found? A. I can't recall at the moment. Q. Is there a specific website? A. You know, I don't remember because I haven't really gone out looking."); *id.* at 27:12-15 ("Q. Can you describe your experience with retailers in Connecticut, New York, and California as to the purchase of rare or heavily allocated wine? A. I have none.").

Additionally, on one occasion, Anvar requested that a Rhode Island retailer order a specific wine for him.[5] Anvar Depo. at 32:4-33:2 ("Q. Have you ever asked a wine retailer to order a

---

[5] Under its three-tier system, Rhode Island law permits special orders. *See* R.I. Gen. Law §§ 3-4-2, 3-4-3, 3-4-4.

specific wine for you? A. Yes, one time. Q. And on what occasion was that? A. My wife and I had a bottle someplace that we liked, it was a restaurant in Rhode Island, and I asked them about it, and they were able to get it. Q. Do you recall the name of the wine? A. I don't. Q. Do you recall the name of the retailer? A. It was North Kingstown Liquors. Q. And when approximately did this happen? A. Two years ago. Q. So you asked them to try to source a wine for you, and they were able to? A. Yes. Q. Have you done that subsequently, or no? A. No. Q. That was a no? A. No, correct. Q. Did the retailer have that on the shelf, or did they have to order it for you? A. They didn't have it on the shelf. They had to order it.").

The best Anvar can muster when it comes to standing is the following: (1) when he worked at a job in Westerly, he was interested in a website called Wines Til Sold Out, but a work colleague who lived in Connecticut placed the orders; and (2) he considered buying his wife a wine of the month club as a present but he doesn't recall the name of the club or the wines it sold. Anvar Depo. at 15:12-25[6];16:2-7; 21:12-25. Anvar made no effort to determine whether the wines from Wines Til Sold Out or the wine club were otherwise available in Rhode Island. Anvar Depo. at 31:1-9 ("Q. Did you make any effort to determine whether the wines offered in that wine of the month club were available in Rhode Island? A. No."); 33:9-16 (Q. I understand you and some work colleagues made some purchases on a website called Wines 'til Sold Out; is that correct? A. Yes. Q. Did you ever attempt to determine whether the wines on that website were available in Rhode Island? A. No.").

### C. **Discovery Established Drum's Lack of Standing**

Plaintiff Drum similarly received recommendations from her counsel as to out-of-state wine stores she should call to ask if they would deliver wine to Rhode Island. *See, e.g.,* Exhibit

---

[6] During his deposition, Anvar was unaware that Rhode Island law permits individuals to purchase wines in person at vineyards and ship the wine back to Rhode Island. Anvar Depo. 29:11-16; R.I. Gen. Laws § 3-4-8.

5

C, Excerpts of Deposition Transcript of Michelle Drum ("Drum Depo.") at 26:15-27:21 ("Q. And this interrogatory essentially asks you to list every out-of-state retailer who would not deliver wine to Rhode Island; correct? A. Correct. Q. And you listed three: Binny's Beverage Depot in Illinois, K & L Wine Merchants in California, and Federal Wines & Spirits in Boston; right? A. Yes. Q. How did you come to learn that Binny's Beverage Depot in Illinois didn't deliver wines to Rhode Island? A. I asked Mr. Epstein for some suggestions on, you know, who I should be calling. Q. Can you explain that a little bit more, please. A. I mean, as I said, I needed some guidance, yeah, as to, you know, some larger wine retailers, you know, certainly on the East Coast area, and I asked Mr. Epstein for some suggestions. Q. And he suggested Binny's Beverage Depot in Illinois? A. Yes. Q. And did he also suggest K & L Wine Merchants in California? A. Yes, and I knew about Federal Wines & Spirits. Q. Okay. Did he suggest Federal Wines & Spirits? A. Yes, but I knew about them already, yeah, so we just kind of matched up on that one.")

As with Anvar, Drum testified that though she visited the websites counsel suggested, she was not trying to purchase a specific wine from any of those out-of-state retailers. *Id.* at 27:8-16 (Q. Did you visit the website for Binny's Beverage Depot? A. Yes, I did. Q. Were you trying to buy a specific wine from them? A. Not at this point."); *id.* at 41:22-42:25; *id.* at 45:4-15 ("Q. I just want to clarify. Did you attempt to purchase wine from K & L Wine Merchants in California? A. No. Q. Did you attempt to purchase wine from Federal Wines & Spirits in Boston? A. No. I mean, I called to ask if they will deliver, but obviously if they can't, they wouldn't send it to me, so no. Q. Was there a specific wine you were hoping to purchase? A. I didn't get that far.").

Later in her testimony, Drum admitted that she contacted the out-of-state retailers for this litigation, not to purchase wine. Drum Depo. at 65:8-15 ("Q. You spoke to Ms. Shea about a wine store or a retail entity named Binny's, one named K & L, and one named Federal; do you recall

6

speaking to Ms. Shea in general about those three entities? A. Yes. Q. When you contacted those entities, did you do so to buy wine, or for this litigation? A. For this litigation."). Likewise, as with Anvar, while Drum testified that it was her "understanding" that wine options were limited in Rhode Island, she could not identify one wine that was unavailable for purchase in Rhode Island that she wished to purchase but could not. *Id*. at 67:21-69:4.

Nor do Drum's answers to interrogatories help her establish standing. Drum identified three retailers that she learned will not ship wine to Rhode Island consumers, but did not identify a single wine she sought to purchase from those retailers or any other out-of-state retailer. *See* Exhibit D, Plaintiff Michelle Drum Responses to Interrogatories.

And though Drum assumed that a particular Barolo wine that she previously ordered from a wine shop in New York City[7] was unavailable in Rhode Island, she did not ask any Rhode Island retailer to order that wine for her. Drum Depo. at 66:17-23 ("You mentioned a Barolo that you purchased for your brother, an Elio Grasso Barolo. Did you inquire whether, for instance, Vickers' was able to bring that wine into Rhode Island for you? A. I mean, I could now, but I haven't.").

Drum's best attempt to establish standing is that she sought a particular type of Italian wine as a present for her brother two years ago. *See, e.g.*, Ex. C at 15:6-18:10. She inquired at three stores in Newport, purchased from a New York City store that shipped her purchase to Rhode Island, and acknowledged that at least one Rhode Island retailer might be able to special order that wine for her. Thus, in that transaction, Drum suffered no harm.

---

[7] Once again, Plaintiffs' counsel provided Drum with the name of the New York City wine shop and the recommended Barolo wines, which wines the New York City wine shop sold and shipped (illegally) to Drum. *Id.* at 31:23-34:18.

### D. The Court Grants Request for Stay To Address Standing

Following the depositions, fact discovery closed on January 22, 2021. On February 24, 2021, Defendants collectively moved to stay the scheduling order to permit them to file a joint dispositive motion on the issue of Plaintiffs' standing. *See* Defendants' Joint Motion to Stay Scheduling Order, ECF 35. The Court granted the motion to allow for briefing on the issue of standing. *See* Text Order, March 8, 2021.

## II. STANDARD OF REVIEW

The proper vehicle for challenging a court's subject matter jurisdiction, including a plaintiff's standing, is Federal Rule of Civil Procedure 12(b)(1). *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001). "A motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction may raise either a facial challenge (where the moving party asserts that the complainant's allegations are insufficient on their face to state a basis for federal jurisdiction) or a factual challenge (where the moving party argues that the court lacks jurisdiction as a matter of fact)." *Spencer v. Doran*, No. 18-CV-1191-LM, 2021 WL 294556, at *2 (D.N.H. Jan. 28, 2021) (citing *Torres-Negron v. J &N Records, LLC*, 504 F.3d 151, 162, 162 n. 8 (1st Cir. 2007) (citations omitted).

Here, Defendants present a factual challenge.[8] In such circumstances, "there is no presumption of truthfulness attached to the plaintiff's allegations, and plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence." *Spencer*, 2021 WL 294556, at *2 (quoting 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1350 (3d ed.)); *see also Biogen, Inc. v. Schering AG,* 954 F. Supp. 391, 395 (D. Mass. 1996) ("If a Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction . . . the movant is

---

[8] Regardless of the type of challenge, Plaintiffs bear the burden of establishing standing. "The party invoking federal jurisdiction has the burden of establishing that it exists." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003).

deemed to be challenging the factual basis for the court's subject matter jurisdiction. . . For purposes of such a motion, the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court.") (citations and quotations omitted).

In conducting its fact finding, "[t]he court may consider exhibits and other documents outside the pleadings on a Fed. R. Civ. P. 12(b)(1) motion." *Cuomo v. U.S. Bank, N.A. for Bear Stearns Asset Backed Sec. I, LLC, 2006-HE5*, No. CV 17-485 WES, 2018 WL 3993444, at *2 (D.R.I. Aug. 21, 2018); *see also Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002), as corrected (May 8, 2002). "The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion." *Gonzalez*, 284 F.3d at 288.

Finally, one person lacks the standing to advance the Constitutional rights of another. *Zell v. Ricci*, 321 F. Supp. 3d 285, 295 (D.R.I. 2018), *aff'd in part, vacated in part, remanded*, 957 F.3d 1 (1st Cir. 2020).

### III.    ARGUMENT

The question of standing is jurisdictional and includes three elements; a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. __, 136 S. Ct. 1540, 1547 (2016). As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements." *Id*. at 1547. Here, dismissal for lack of standing is warranted because Plaintiffs have failed to plausibly show the "constitutional requirement" of an injury in fact, i.e., "invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent," rather than "conjectural or hypothetical." *Id*. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

9

The Supreme Court in *Spokeo* clarified that "concrete" and "particularized" constitute independent, necessary requirements for standing, and that "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (quoting Black's Law Dictionary 479 (9th ed. 2009)).

### A. Plaintiffs May Not Advance Interests of Out-of-State Retailers

The Complaint alleges that Plaintiffs seek to remedy discrimination against out-of-state retailers. ECF 1 at p. 1. Neither Anvar nor Drum is an out-of-state purveyor of wine, and they may not advance the Constitutional rights of another. *Zell,* 321 F. Supp. 3d at 295. Therefore, any alleged discrimination against out-of-state retailers cannot form the basis of Plaintiffs' standing.

### B. Plaintiffs Fail To Meet Their Burden as to Injury in Fact

Article III of the United States Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." *See, e.g.*, *Spokeo* 136 S. Ct. at 1547; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. at 559. "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To establish standing, Plaintiffs must establish injury in fact.

To satisfy the injury-in-fact requirement, Anvar and Drum must demonstrate that they "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). Plaintiffs Anvar and Drum have not met their burden of establishing standing because they have not suffered a concrete "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. Instead, their own testimony establishes that both Plaintiffs called several liquor stores outside of Rhode Island at counsel's suggestion, but with no intention of actually purchasing a specific wine. Further, neither Anvar nor Drum could identify a single instance in which they

10

were unable to buy a particular wine they sought. Indeed, neither Plaintiff could identify any specific wine unavailable for purchase in Rhode Island.

At best, Plaintiffs allege a bare Commerce Clause violation of the right to engage in interstate commerce. That is insufficient. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549. *See also Davis v. Passman*, 442 U.S. 228, 239-240 n.18 (1979) (concepts of the existence of a cause of action and standing to pursue a violation of a constitutional provision are distinct). Plaintiffs cannot demonstrate a "concrete" injury in the form of harm that "actually exists" above and beyond a mere constitutional "injury-in-law" to establish the requisite injury in fact to confer Article III standing. *Spokeo*, 136 S. Ct. at 1548.[9]

For an injury to be concrete, "it must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (citation omitted). The term "concrete" is intended "to convey the usual meaning of the term—'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548. Plaintiffs' alleged injury is that "they would buy wine directly from wine retailers located outside of Rhode Island and have these wines delivered to their residences" if it were permitted under Rhode Island law. ECF 1 at ¶ 17. They allege that (1) they have attempted to purchase wine from several out-of-state retailers for delivery to their Rhode Island residences, but have been refused, *id.* at ¶ 18, and (2) they have been harmed by their inability to procure the "many rare, unusual, and heavily allocated wines" readily available at out-of-state retailers but allegedly not available in Rhode Island, *id.* at

---

[9] Defendants are mindful that in prosecuting their slew of out-of-state retail direct shipping cases, Plaintiffs' counsel has traveled on the "implied right to interstate commerce" theory to establish standing. *See Block v. Canepa,* 2:20-cv-03686-SDM-CMV, 2021 WL 615197 (S. D. Ohio Feb. 17, 2021); *B-21 Wines, Inc. v. Guy*, 3:20-CV-00099-FDW-DCK, 2020 U.S. Dist. LEXIS 151258, at *7-8 (W.D.N.C. Aug. 18, 2020). But the success of Plaintiffs' counsel in those cases does not help them here for two reasons: (1) unlike the facial challenges to the standing allegations in the *Block* and *B-21 Wines* cases, this case involves a factual challenge; (2) unlike this case, the plaintiffs in *Block* and *B-21 Wines* included an out-of-state retailer, and the courts in those cases noted the fundamental tenet that only one plaintiff needs to have standing in order for a claim to move forward.

¶ 19-20. But because Defendants' motion is a factual challenge to Plaintiffs' standing, those allegations in the Complaint are not accepted as true where they are controverted, like here. Plaintiffs' deposition testimony reveals that they lack the necessary injury in fact because their alleged harm does not "actually exist" and is not "real." *Spokeo*, 136 S. Ct. at 1548.

As laid out above, Anvar's testimony makes very clear that he has not attempted to purchase wine from an out-of-state retailer. Anvar Dep. 28:5-7. Anvar did contact three Massachusetts retailers to inquire about delivery—all of which were on a list of retailers provided by his counsel—but Anvar was explicit that he did not do so to purchase wine. Anvar Dep. 19:20-25. Similarly, Drum testified that though she called and visited the websites of a few out-of-state retailers—again, all of which her counsel suggested to her—she did so for "this litigation" and "an education" and not to purchase any wine. Drum Dep. 27:8-21, 28:1-3, 29:1-3.

Neither Anvar nor Drum could identify a single wine unavailable in Rhode Island that they sought to purchase. Anvar could not name any of the alleged rare wines available out-of-state but not in Rhode Island and could not identify any of the Connecticut, New York, or California retailers purported to have these wines "readily available." Anvar Dep. 25:24-25, 26:1-4, 27:2-15. Drum similarly could not identify any wine that was unavailable for purchase in Rhode Island that she wished to purchase but could not. Drum Dep. 67:21-69:4.

Plaintiffs have not suffered a "de facto" and "real" injury. Their conclusory allegations of harm are wholly unsupported by the record. Plaintiffs fail to establish a "concrete" injury in the form of harm that "actually exists" above and beyond a mere constitutional "injury-in-law" to establish the requisite injury in fact to confer Article III standing. *Spokeo,* 136 S. Ct. at 1548.

## IV. CONCLUSION

For the reasons set forth above, this Court should grant Defendants' motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction because of Plaintiffs' lack of standing and dismiss the Complaint with prejudice.

Dated: April 5, 2021

ELIZABETH M. TANNER, Director of the
Department of Business Regulation and
PETER F. NERONHA, Attorney General of
the State of Rhode Island
*/s/ Andrea M. Shea*
Andrea M. Shea, # 9702
Lauren E. Hill, #9830
Special Assistant Attorneys General
150 South Main Street
Providence, RI 02903
Tel (401) 274-4400
Fax (401) 222-2995

RHODE ISLAND RESPONSIBLE
BEVERAGE ALCOHOL COALITION, INC.
By its Attorneys,
*/s/ Ryan M. Gainor*
Ryan M. Gainor, #9353
Hinckley Allen & Snyder, LLP
100 Westminster Street, Suite 1500
Providence, RI 02903
Tel (401) 274-2000
Fax (401) 277-9600
   and
Deborah A. Skakel (admitted pro hac vice)
Blank Rome LLP
1271 Avenue of the Americas
New York, NY 10020
Tel (212) 885-5000
Fax (917) 591-7897