UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KAMBIS ANVAR and MICHELLE
DRUM,
    Plaintiffs,

v.

ELIZABETH TANNER, in her official
capacity as Director of R.I. Department
of Business Regulation, and PETER
NERONHA, in his official capacity as
Attorney General of Rhode Island,
    Defendants.

C.A. No. 19-523-JJM-LDA

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of R.I. Gen. Laws § 3-4-8(a) and 230 R.I. Admin. Code 30-10-1.4.19(B)(1), which prohibit out-of-state alcohol retailers from selling, shipping, and delivering alcohol directly to Rhode Island residents, and R.I. Gen. Laws §§ 3-5-10, 3-5-11, 3-5-15, 3-5-17, and 3-7-18, and 230 R.I. Admin. Code 30-10-1.4.10(B) and 30-10-1.4.27, which Plaintiffs allege have the practical effect of preventing out-of-state retailers from lawfully selling and delivering alcohol to Rhode Island consumers. Plaintiffs assert that these provisions unlawfully benefit in-state sellers to the detriment of out-of-state business interests, in violation of the Commerce Clause of the United States Constitution. Defendants move to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction.

## I. BACKGROUND

Plaintiffs Kambis Anvar and Michelle Drum are Rhode Island residents and wine consumers over the age of twenty-one who wish to purchase wine from out-of-state sources and have it delivered to their homes. Plaintiffs have contacted out-of-state sellers by telephone and the Internet seeking Rhode Island wine delivery. ECF No. 1, ¶ 18. The retailers have, in turn, declined invitations to place such orders.[1] *Id.* Plaintiffs allege that because Rhode Island law does not mandate that in-state alcohol purchases be made in person and permits direct-to-consumer orders from out-of-state wineries, the only justification for barring out-of-state retail shipments is thus impermissible protectionism. *Id.*, ¶¶ 22-23.

Plaintiffs filed suit seeking a declaratory judgment that this regulatory scheme violates the Commerce Clause of the United States Constitution. *Id.* at 6. Plaintiffs further ask this Court to enjoin Defendants from enforcing the relevant statutory and regulatory provisions and direct Defendants to permit direct-to-consumer wine sales, shipments, and deliveries. *Id.*

Defendants filed an Answer (ECF No. 15) and requested a stay as to expert discovery to allow for briefing on the issue of subject-matter jurisdiction (ECF No. 35).

---

[1] Additionally, Plaintiff Anvar described attempting to have wine delivered to Rhode Island from wine discount website "Wines 'Til Sold Out." ECF No. 40-1 at 15:18-16:01. He also recounted attempting to participate in a wine of the month club. ECF No. 40-1 at 16:02-16:08. *See also* ECF No. 40-1 at 17:19-25:09; ECF No. 40-3 at 26-28; 30-31.

Defendants subsequently filed a Motion to Dismiss for lack of standing. ECF No. 40. Along with their motion, Defendants included excerpts of Plaintiffs' depositions and answers to interrogatories from discovery that pre-dated the Court's stay of the scheduling order. ECF No. 40-1 – 40-4. Defendants attack standing by virtue of a challenge controverting the Complaint's factual underpinnings. ECF No. 40 at 8-9.

In responding to the Motion to Dismiss, Plaintiffs submitted personal declarations expanding on their depositions and responses to interrogatories, among other materials. ECF No. 41-2, 41-3. Additionally, Plaintiffs filed declarations containing the results of counsel's research as to out-of-state retailers' desire to deliver wine to Rhode Island residents if the law so permitted, as well as to the purported unavailability of certain wines in the Rhode Island marketplace. ECF No. 41-4, 41-7.

Defendants Move to Strike the declarations as inadmissible hearsay and on other grounds. ECF No. 43.

## II. STANDARD OF REVIEW

Defendants have Moved to Dismiss the claims against them under Rule 12(b)(1). Generally, "[t]he proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1)." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001). If a plaintiff "lacks Article III standing to bring a matter before the court, the court lacks subject matter jurisdiction to decide

3

the merits of the underlying case." *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996) (citing *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990)).

The procedural posture here is unique. Defendants fashion their Rule 12(b)(1) Motion to Dismiss as a factual challenge to standing, rather than a facial one. In a facial challenge, "the court must credit the plaintiff's well-pleaded factual allegations," draw all reasonable inferences in the plaintiff's favor, and adjudicate the challenge accordingly. *Valentin*, 254 F.3d at 363. By contrast, in a factual challenge, the plaintiff disputes "the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer[s] materials of evidentiary quality in support of that position." *Id.* In the context of such a challenge, a plaintiff's facts are entitled to "no presumptive weight," and the court may delve into auxiliary submissions beyond the pleadings. *Id.* "The attachment of exhibits to a 12(b)(1) motion does not convert it" to a motion for summary judgment. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

### III. DISCUSSION

#### A. Properly Characterizing Defendants' Dispositive Motion

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12. Here, Defendants so moved after filing an Answer. Plaintiffs argue that this poor timing converted Defendants' motion under Rule 12(b)(1) to a motion for summary judgment. But, where a lack of subject-matter jurisdiction is alleged in a post-answer Rule 12(b)(1) motion, a court may decide the jurisdictional issue under Rule 12(h)(3). That

4

rule provides: "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also* Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); *Greystone Bank v. Tavarez*, No. 09-CV-5192 (SLT), 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010) (collecting cases). Thus, the Court will consider Defendants' motion under Rule 12(h)(3).

*B. Standing*

Defendants contend that Plaintiffs lack standing to advance their claims. "[A] federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, No. 20-297, 2021 WL 2599472, at *7 (U.S. June 25, 2021) (quoting *Am. Legion v. Am. Humanist Assn.*, 139 S. Ct. 2067, 2103 (2019)). A plaintiff carries the jurisdictional burden. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003).

To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Injury in fact" means an "'invasion of a legally protected interest'" that is both "'concrete and particularized'" as well as "'actual or imminent,'" rather than "'conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way,'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1), with a plaintiff possessing "'a personal stake' in the case." *TransUnion*, No. 20-297, 2021 WL 2599472, at *6 (quoting *Raines v. Byrd*, 521 U.S.

5

811, 819 (1997)). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (citing Black's Law Dictionary 479 (9th ed. 2009)). "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Spokeo*, 136 S. Ct. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)).

Here, the traceability and redressability elements needed to establish standing are not in dispute. Rather, Defendants assail injury in fact.[2] In bringing their factual challenge, Defendants assert that since Plaintiffs did not *intend* to complete a purchase and did not *desire* particular wine brands or vintages when contacting the out-of-state suppliers, that Plaintiffs were not injured in a manner that confers standing.[3] This argument inappropriately links intent and injury in fact and marginalizes long-held Commerce Clause jurisprudence.

---

[2] It is worth noting that no court confronted with comparable allegations has declined to find standing where consumer-plaintiffs pleaded injury by virtue of a state regulatory scheme that legally barred them from purchasing alcohol direct-to-consumer from out-of-state merchants. *See, e.g., Sarasota Wine Mkt. v. Schmitt*, 987 F.3d 1171, 1178 (8th Cir. 2021); *B-21 Wines v. Guy*, No. 3:20-cv-00099-FDW-DCK, 2020 WL 4819540, at *3-4 (W.D.N.C. 2021); *Block v. Canepa*, No. 20-cv-3686, 2021 WL 615197, at *3-4 (S.D. Ohio 2021); *Freeman v. Corzine*, 629 F.3d 146, 154-57 (3d Cir. 2010); *Baude v. Heath*, No. 1:05-cv-0735-JDT-TAB, 2007 WL 2479587, at *8 (S.D. Ind. 2007); *Huber Winery v. Wilcher*, No. 3:05-CV-289-S, 2006 WL 8449122, at *4-6 (W.D. Ky. 2006); *Cherry Hill Vineyards, LLC v. Hudgins*, 488 F. Supp. 2d 601, 606-08 (W.D. Ky. 2006); *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 849-50 (7th Cir. 2000).

[3] Defendants characterized Plaintiffs' depositions thusly: "[Plaintiffs] testified that they contacted out-of-state retailers for the purpose of this lawsuit at the suggestion of their counsel, but not with any *intention* of purchasing wine." (emphasis added). ECF No. 40 at 3.

The Supreme Court has consistently characterized the Commerce Clause as "conferring a 'right' to engage in interstate trade free from restrictive state regulation.'" *Dennis v. Higgins*, 498 U.S. 439, 448 (1991) (citing *Crutcher v. Kentucky*, 141 U.S. 47, 57 (1891)). "To carry on interstate commerce is not a franchise or privilege granted by the State; it is a right which every citizen of the United States is entitled to exercise under the Constitution and laws of the United States." *Crutcher*, 141 U.S. at 57. *See also Granholm v. Heald*, 544 U.S. 460, 473 (2005) (recognizing citizens have the "right to have access to the markets of other States on equal terms"); *W. Union Tel. Co. v. Kansas ex rel. Coleman*, 216 U.S. 1, 26 (1910) (referring to "the substantial rights of those engaged in interstate commerce"); *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967) (engaging in interstate commerce is a "righ[t] of constitutional stature"). This constitutional legacy undergirds a clear legally protected interest in interstate commerce free of state regulation. *See Spokeo*, 136 S. Ct. at 1548 (citing *Lujan*, 504 U.S. at 560).

Based on the facts alleged, the Court finds that Plaintiffs' harm is both concrete and particularized. Put simply, Plaintiffs contacted out-of-state merchants and were prevented from purchasing and receiving a lawful product in an interstate marketplace in which they wish to participate. Moreover, Plaintiff Anvar sought to have wine delivered to Rhode Island from wine discount website "Wines 'Til Sold Out," ECF No. 40-1 at 15:18-16:01, and to purchase a wine of the month club delivery membership. *Id.* at 16:02-16:08. Plaintiff Drum, like Anvar, contacted out-of-state retailers who conveyed that they would not deliver product to Rhode Island resident

7

Plaintiffs. ECF No. 40-3 at 26:15-28:06; ECF No. 40-4 at 5,7. The harm is concrete and actual, and it triggers live constitutional and economic issues. *Spokeo*, 136 S. Ct. at 1548. The injury is also particularized, and Plaintiffs have a personal stake in the disposition of this matter: Plaintiffs are themselves wine purchasers and drinkers who attempted to engage in a type of cross-border transaction their state of citizenship proscribes. *See id.* Defendants question Plaintiffs' motivations in contacting out-of-state wine retailers, Plaintiffs' counsel's level of involvement in recommending retailers, and Plaintiffs' personal knowledge as to wine brand availability in Rhode Island.[4] *See* ECF No. 40 at 10-11. Notwithstanding that "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging" the constitutionality of a statute where a plaintiff is subject to a threatened punitive result, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014),[5] a plaintiff's motivation is simply not germane to an injury in fact analysis.

---

[4] Defendants also question which wine brands are out of Plaintiffs' reach by virtue of their unavailability in the Rhode Island marketplace. Defendants argue this in the context of standing, citing support from other courts that specified wine availability in determining that plaintiffs had sustained sufficient injury. *See* ECF No. 42 at 7 n. 8. Upon review of these cases, this Court finds that courts elsewhere did not indicate brand availability was essential to finding standing. But even if it were, Plaintiff Drum alleged that she turned to a New York wine seller having been unable to find the Barolo wine she desired. ECF No. 40-3 at 15, 31-32. The Court foresees that the issue of availability may carry more relevance in assessing Commerce Clause implications amid an analysis of the merits.

[5] In answers to interrogatories, Defendants noted they have brought "enforcement activities directed at online ordering and deliveries at least ten (10) times in the past two (2) years." ECF No. 41-10 at 4. At oral argument, Defendants said none of the "enforcement activities" to date has been directed at Rhode Island consumers. Of course, this in no way alters Plaintiffs' or consumers' exposure to enforcement, and this Court would not require a Rhode Island consumer to consummate a transaction in order to vindicate a constitutional right.

*See Pagan v. Calderon*, 448 F.3d 16, 30 (1st Cir. 2006) (standing inquiry turns on injury, not motive); *see also Wilson v. Moulison N. Corp.*, 639 F.3d 1, 10 (1st Cir. 2011) (subjective beliefs insufficient to create standing). Indeed, the First Circuit Court of Appeals recently issued an opinion, agreeing with other Courts of Appeals, that standing clearly exists where plaintiffs are "testers" (plaintiffs who seek to challenge the legality of a statute or expose an actor's noncompliance with governing law). *Suarez-Torres v. Panaderia Y Reposteria España, Inc.*, 988 F.3d 542, 550 (1st Cir. 2021) (standing found where plaintiff entered bakery not as customer but motivated to detect violations of Americans with Disabilities Act).[6] In so concluding, these courts viewed a plaintiff's driving motivation as not relevant in an injury in fact analysis. This Court agrees and declines to probe intent in determining the existence of standing.

## IV. CONCLUSION

Plaintiffs have pleaded sufficient injury in fact to constitute Article III standing and to clear this early jurisdictional hurdle. Naturally, the question of whether Rhode Island's three-tier alcohol distribution system and bar on out-of-state

---

[6] *See Suarez-Torres*, 988 F.3d at 550 n. 8 (acknowledging the civil rights movement's long history of using testers to illustrate state-sanctioned discrimination); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-75 (1982) (tester with no intention of buying home sued realtor for providing inaccurate or incomplete housing information); *Pierson v. Ray*, 386 U.S. 547, 552-54 (1967) (Black clergymen "tested" segregated bus terminal knowing legal woes would ensue); *Evers v. Dwyer*, 358 U.S. 202, 203-04 (1958) (Black passenger tester sat in White section of segregated bus with intention of initiating litigation).

9

retailer direct-to-consumer alcohol sale, delivery, and shipment can withstand Plaintiffs' attack is for another day. Accordingly, the Court DENIES Defendants' Motion to Dismiss. ECF No. 40.

Because the declarations Defendants seek to have stricken were not material for the Court's resolution of the narrow jurisdictional issue at hand – and the Court did not rely on them in its analysis – the Court DENIES AS MOOT Defendants' Motion to Strike. ECF No. 43.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.
John J. McConnell, Jr.
Chief Judge
United States District Court

July 16, 2021