UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| KAMBIS ANVAR and MICHELLE DRUM,<br>    Plaintiffs,<br><br>v.<br><br>ELIZABETH KELLEHER DWYER, Interim Director of Department of Business Regulation,[1] and PETER F. NERONHA, Attorney General of Rhode Island<br>    Defendants,<br><br>v.<br><br>RHODE ISLAND RESPONSIBLE BEVERAGE ALCOHOL COALITION, INC.<br>    Intervenor Defendant. | C.A. No. 19-523-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief Judge, United States District Court.

Plaintiffs Kambis Anvar and Michelle Drum are wine consumers who live in Rhode Island and want to buy wine from out-of-state retailers and have it delivered directly to them in Rhode Island. Rhode Island's three-tier statutory scheme regulating the sale and distribution of alcohol prevents the sale of alcohol directly to consumers unless it is from licensed retailers in residence that get the alcohol from

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Elizabeth Kelleher Dwyer, Interim Director of the Department of Business Regulation, in her official capacity, as plaintiff for Elizabeth M. Tanner.

licensed wholesalers. Plaintiffs filed this suit, alleging that those laws discriminate against out-of-state businesses, thereby violating the dormant Commerce Clause, and now move for summary judgment. ECF No. 58. Elizabeth Kelleher Dwyer in her official capacity as Interim Director of the Rhode Island Department of Business Regulation ("DBR") and Peter F. Neronha in his official capacity as Rhode Island Attorney General and Intervenor Defendant Rhode Island Responsible Beverage Alcohol Coalition, Inc. (collectively "State Defendants")[2] object to Plaintiffs' motion and have cross-moved for summary judgment, arguing that the way that Rhode Island regulates alcohol sales and distribution aligns with the Twenty-first Amendment to the United States Constitution and is permissible under the dormant Commerce Clause. *See* ECF Nos. 64, 70. For the reasons below, the Court GRANTS Defendants' Motions for Summary Judgment (ECF Nos. 64 and 70) and DENIES Plaintiffs' Motion for Summary Judgment (ECF No. 58).

## I. BACKGROUND

Plaintiffs are wine enthusiasts who wish to purchase online unique and rare bottles of wine from out-of-state retailers for shipment to their homes. Rhode Island's liquor control laws, however, prevent their wish from being realized. The state's three-tier system of alcohol regulation began in the early 20th century when the states ratified the Twenty-first Amendment. U.S. CONST. amend. XXI. "The ratification of the Twenty-first Amendment ended Prohibition and gave states

---

[2] Because the interests of the Rhode Island Responsible Beverage Alcohol Coalition, Inc., the Intervenor Defendant, align with those of the named State Defendants, the Court refers to them collectively as Defendants.

2

substantial control over the regulation of alcoholic beverages. Most states . . . then imposed a three-tier system to control the sale of alcoholic beverages within their territories." *Fam. Winemakers of Cal. v. Jenkins*, 592 F.3d 1, 5 (1st Cir. 2010); *Granholm v. Heald*, 544 U.S. 460, 488 (2005) (quoting *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980)) (§ 2 of the Twenty-first Amendment "'grant[ed] the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system.'").

The typical three-tier system[3] is one in which "'the producer sells to a licensed in-state wholesaler, who pays excise taxes and delivers the alcohol to a licensed in-state retailer. The retailer, in turn, sells the alcohol to consumers, collecting sales taxes where applicable.'" *Sarasota Wine Mkt., LLC v. Schmitt*, 987 F.3d 1171, 1176 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 335 (2021) (quoting *Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185, 187 (2d Cir. 2009)). "The hallmark of the three-tier system is a rigid, tightly regulated separation between producers, wholesalers, and retailers of alcoholic beverages." *Fam. Winemakers*, 592 F.3d at 5. "A primary purpose of this model is to prevent a return to 'the English tied-house system' in which alcohol producers monopolized distribution from producer to consumer, a system widely perceived as causing or at least contributing to the social ills of excess alcohol consumption and consumption by minors." *Sarasota Wine*, 987 F.3d at 1176; *Tenn.*

---

[3] This version of the three-tier system described by the affirming courts mirrors Rhode Island's system.

3

*Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2463 n.7 (2019) (the tied-house system "often encouraged irresponsible drinking").

Rhode Island regulates the sale and distribution of alcohol through these statutes and administrative rules:

a. R.I. Gen. Laws § 3-4-8(a) makes it unlawful for anyone in the business of selling intoxicating beverages in another state or country to ship any intoxicating beverage directly to a Rhode Island resident other than a licensed Rhode Island wholesaler.[4]

b. R.I. Gen. Laws § 3-5-10 states that a retailer license may be issued to residents of Rhode Island and corporations incorporated in another state and authorized to do business in Rhode Island.

c. R.I. Gen. Laws § 3-7-18 requires that licensed Rhode Island retailers buy from licensed Rhode Island wholesalers ("in-state wholesale purchase requirement").

d. 230 R.I. Admin. Code 30-10-1.4.19(B)(1) is the "at rest" law under which all alcoholic beverages brought into Rhode Island for resale must be consigned and delivered to a licensed Rhode Island wholesaler.

e. 230 R.I. Admin. Code 30-10-1.4.27 requires that the retailer license must identify a premises for operation under the license ("retailer presence requirement").

f. 230 R.I. Admin. Code 30-10-1.4.10 provides that the owner or employee of a Class A retailer license holder may deliver alcoholic beverages to the residence of a customer. The licensed Rhode Island retailer may not use a common carrier for delivery.

g. R.I. Gen. Laws § 3-5-11 prohibits the issuance of certain alcohol-related licenses to "chain store organizations."

h. R.I. Gen. Laws § 3-5-15 vests with licensing boards and/or town

---

[4] The state makes an exception for an order placed personally by the purchaser at the manufacturer's premises to be shipped to a Rhode Island address for non-business purposes; that is, Rhode Island consumers may buy wine while on the premises of an out-of-state winery and have it delivered by common carrier to their Rhode Island residences.

4

        councils the authority to grant retailer licenses up to the maximum number fixed by DBR.

   i.    R.I. Gen. Laws § 3-5-17 requires notice and a hearing before certain retailer licenses can be granted.

*See* ECF No. 71 at 13. In practice, Rhode Island requires that licensed retailers and wholesalers have a physical presence in the State and mandates that retailers buy only from in-state wholesalers. It does not impose a residency requirement on retailers or wholesalers. In deciding these motions for summary judgment, the Court must decide whether Rhode Island's three-tier system of alcohol regulation violates the dormant Commerce Clause.

## II.  STANDARD OF REVIEW

Summary judgment is proper when the pleadings, discovery, and affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. To decide whether summary judgment is suitable, the court analyzes the record in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. *See Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997). "When reviewing cross-motions for summary judgment, [courts] must decide whether either of the parties deserves judgment as a matter of law on facts that are not disputed. [Courts] review each motion independently and view the record in the light most favorable to the nonmoving party when doing so." *Dahua Tech. USA Inc. v. Feng Zhang*, 988 F.3d 531, 539 (1st Cir. 2021) (citation omitted) (internal quotation omitted); *see also Wightman v. Springfield Terminal Ry.*, 100 F.3d 228, 230 (1st Cir. 1996) ("Cross

motions simply require [courts] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.").

## III. DISCUSSION

"[T]he [Supreme] Court staunchly affirmed the 'right of the States,' in exercising their 'police power,' to 'protect the health, morals, and safety of their people,' but also cautioned that this objective could be pursued only 'by regulations that do not interfere with the execution of the powers of the general government, or violate rights secured by the Constitution of the United States.'" *Tenn. Wine*, 139 S. Ct. at 2464 (quoting *Mugler v. Kansas*, 123 U.S. 623, 659 (1887)). This is where the Commerce Clause enters the discussion. It prohibits states from discriminating against the flow of goods in interstate commerce. At its core, the dormant aspect of the Commerce Clause "precludes States from 'discriminat[ing] between transactions on the basis of some interstate element.'" *Comptroller of Treasury of Md. v. Wynne*, 575 U.S. 542, 549 (2015) (quoting *Bos. Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 332 n.12 (1977)). The dormant Commerce Clause forbids protectionism where in-state interests are positively impacted, and out-of-state interests suffer negative consequences.

In cases involving dormant Commerce Clause challenges to the regulation of alcohol, courts have moved beyond the starting point of an automatic per se constitutional violation to a less strict test[5] where they are encouraged to engage "in

---

[5] Plaintiffs argue that the more rigorous "searching scrutiny" standard applies, while Defendants argue for the less stringent "different inquiry" test. After reviewing

6

a different inquiry." *Tenn. Wine*, 139 S. Ct. at 2474. "Recognizing that § 2 was adopted to give each State the authority to address alcohol-related public health and safety issues in accordance with the preferences of its citizens, [the court asks] whether the challenged requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." *Id.* This does not give states carte blanche to discriminate against out-of-state interests; there must be "concrete evidence" that the rule or regulation "actually promotes public health or safety," or evidence that "nondiscriminatory alternatives would be insufficient to further those interests." *Id.* (citing *Granholm*, 544 U.S. at 490).

With the issues framed and review standard set, the Court moves to the substance of the cross-motions. Plaintiffs challenge the very basis of Rhode Island's three-tier alcohol regulations system. They ask the Court to strike down under the dormant Commerce Clause Rhode Island's requirements that require alcohol retailers to have a presence in the state, to obtain the alcohol from Rhode Island licensed wholesalers, and prohibit the delivery of alcohol by common carrier. Defendants argue that Rhode Island's statutory scheme reflects a valid state interest and an adequate public health concern, allowing it to withstand the differing inquiry standard. The Court agrees with Defendants' position.

Courts should uphold laws that serve valid state interests such as "promoting temperance, ensuring orderly market conditions, and raising revenue." *North*

---

extensive caselaw and the parties' arguments, the Court finds that the "different inquiry" test set out in *Tennessee Wine & Spirits* applies here.

*Dakota v. United States*, 495 U.S. 423, 432 (1990). "Given the special protection afforded to state liquor control policies by the Twenty-first Amendment, they are supported by a strong presumption of validity and should not be set aside lightly." *Id.* at 433. When a state "has established a comprehensive system for the distribution of liquor within its borders[,] [t]hat system is unquestionably legitimate." *Id.* at 432 (citing *Carter v. Virginia*, 321 U.S. 131 (1944); *California Bd. of Equalization v. Young's Mkt. Co.*, 299 U.S. 59 (1936)); *Granholm*, 544 U.S. at 489. Given the United States Supreme Court's endorsement of this system as "unquestionably legitimate" and that finding in Plaintiffs' favor would dismantle this system, the Court cannot find that Rhode Island's alcohol regulatory system violates the dormant Commerce Clause.

Turning to the specifics of Rhode Island's system,[6] as to its requirement of an in-state presence for retailers, the Supreme Court held that "[t]he Twenty-first Amendment . . . is binding on the Federal Government like everyone else, and empowers [the state] to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler." *North Dakota*, 495 U.S. at 447. An in-state retailer requirement is an "essential feature" of the state's three-tier system of alcohol regulation and promotes the health and safety of Rhode Islanders because it allows the state to conduct on-site inspections and audits to check compliance with the law, and to revoke operating licenses providing "'strong incentives not to sell

---

[6] *See generally*, ECF No. 65-31 for a credible factual recitation of the positive public health and safety impact from Rhode Island's current three-tiered system of alcohol regulation.

8

alcohol' in a way that threatens public health or safety." *Tenn. Wine*, 139 S. Ct. at 2475 (quoting *Granholm*, 544 U.S. at 490). Retail licensees must keep and have available for inspection on their licensed premises all purchase and sale records. ECF No. 65-33 at 3, ¶ 18. This allows the state to regulate alcohol to prohibit threats to Rhode Islanders' public health and safety as the State finds appropriate.

The requirement that retailers buy alcohol only from in-state licensed wholesalers also serves the public's health and safety. Licensed Rhode Island wholesalers are subject to on-site inspections of its licensed premises. ECF No. 75 at 3, ¶ 9. Before a wholesaler license is issued, the premises must undergo and pass DBR inspection. *Id.* The local fire safety agency also conducts an on-site inspection of the licensed premises. *Id.* As a condition of their licenses, Rhode Island wholesalers must make their premises (including their books and records) available for a DBR inspection. *Id.* They undergo an annual on-site inspection and audit of their total state tax filings, including alcohol beverage-related excise tax and container tax filings. *Id.*

Finally, Rhode Island's restriction on common carrier delivery of alcohol is nondiscriminatory between in-state and out-of-state retailers. No retailers, regardless of their location, can deliver alcohol via common carrier. 230 R.I. Admin. Code 30-10-1.4.10 (provides that retailers may not use a common carrier for delivery).

The Court need go no further into Rhode Island's three-tier system of alcohol regulation. Because the Twenty-first Amendment gave states greater leeway under the dormant Commerce Clause to regulate alcohol within their borders, the United

States Supreme Court in *North Dakota* and *Granholm* approved states' three-tier systems as an "unquestionably legitimate" exercises of valid state interests, and Rhode Island's scheme is grounded in its pursuit of public health and safety, the Court finds that the challenged laws and regulations do not violate the dormant Commerce Clause and are constitutional.

## IV. CONCLUSION

The Court DENIES Plaintiffs' Motion for Summary Judgment. ECF No. 58. The Court GRANTS Defendants' Motions for Summary Judgment. ECF Nos. 64, 70.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Chief Judge

September 29, 2022

10