UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| KAMBIS ANVAR and MICHELLE DRUM,<br>Plaintiffs,<br><br>v.<br><br>ELIZABETH DWYER, Director of Dept. of Business Regulation, and PETER NERONHA, Attorney General of Rhode Island,<br><br>Defendants,<br><br>RHODE ISLAND RESPONSIBLE BEVERAGE ALCOHOL COALITION, INC.,<br>Intervenor-Defendant. | C.A. No. 1:19-cv-00523-JJM-LDA |

## ORDER

Defendants have moved to strike Plaintiffs' Evidence and Briefs, claiming they violated their duty to disclose and supplement under Fed. R. Civ. P. 26(e). ECF No. 142. Defendants seek an order excluding the new evidence as a sanction under Fed. R. Civ. P. 37(c)(1). The new evidence includes (1) copy of pages on the Training for Intervention Procedures ("TIPS") website, (2) Attorney James Tanford's Rebuttal Declaration, and (3) Plaintiffs additional factual assertions which cite to the TIPS website and the Rebuttal Declaration. ECF No. 133.

The root of the parties' arguments on this Motion to Strike center on whether the Plaintiffs' new evidence constitutes impeachment evidence or substantive

evidence. This inquiry is important because Rule 26 does not require a party to disclose certain evidence when its "use would be solely for impeachment." *See* Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). However, if a party wants to supplement their discovery disclosures or responses with new *substantive* evidence that was not disclosed to the other party, they must make such supplementations in a timely manner—or as ordered by the court. *See* Fed R. Civ. P. 26(e).

Plaintiffs assert that the evidence at issue was not subject to disclosure under Rule 26 because it was introduced solely to impeach (1) defense witnesses Jason Gold and Nicholas Fede's testimony on TIPS training, and (2) defense witness Kenneth Mancini's testimony about a recall for Flower Chardonnay. ECF No. 144 at 1-2. Plaintiffs argue that Mr. Gold and Mr. Fede's testimony that their employees get in-person TIPS training that addresses home delivery of alcohol were statements implying that out-of-state retailers' employees "do not or cannot get this particular server training." *Id.* at 1. Accordingly, Plaintiffs contend that—for "classic impeachment purpose[s]"—they introduced evidence that TIPS training can be done online, does not cover home deliveries, and is available in all states because such evidence helped reveal the witnesses' "exaggerations and misstatements" on a material issue. *Id.* Plaintiffs further note that they introduced Attorney Tanford's Rebuttal Declaration—which indicated that a Google search failed to reveal evidence of a Flowers Chardonnay recall—solely to impeachment Mr. Mancini's testimony that such a recall occurred. *Id.* at 2.

Defendants counter that Plaintiffs' new evidence is "rebuttal" evidence, which—unlike impeachment evidence—is not excluded from disclosure under Rule 26. ECF No. 142 at 5. Alternatively, the Defendants assert that even if the new evidence served as impeachment evidence, it also served as substantive evidence because the Plaintiffs offered such evidence for its substance to (1) "support affirmative contentions and arguments raised in their brief," and (2) "dispute Defendants' statement of undisputed facts." *Id.* at 6. Accordingly, Defendants contend that the new evidence was not excepted from disclosure under Rule 26 because such evidence was not used *solely* for impeachment purposes. *Id.*

Substantive evidence is evidence "offered to establish the truth of the matter to be determined by the trier of fact." *Klonoski v. Mahlab*, 156 F.3d 255, 270 (1st Cir. 1998) (quoting *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993)). Impeachment evidence is evidence "offered to 'discredit a witness . . . to reduce the effectiveness of [her] testimony by bring forth evidence which explains why the jury should not put faith in [her] . . . testimony.'" *Id* (alterations in original) (quoting *Chiasson* 988 F.2d at 517 (5th Cir. 1993)). These two types of evidence are not mutually exclusive, as some evidence may serve both impeachment and substantive functions. *Id.* But when evidence serves those two functions, it is not excepted from Rule 26's discovery requirements because such evidence would not be offered *solely* for impeachment. *Id; see also* Fed. R. Civ. P. 26(a).

In *Klonoski*, the First Circuit determined that a letter introduced to impeach the plaintiff was not excepted from Rule 26 disclosure requirements because the

3

letter was at least substantive in part and thus not did not fall under the Rule 26(a)'s "solely for impeachment" exception. 156 F.3d at 270. In that case, the issue of the quality of the plaintiff's marital relationship with his deceased wife was relevant to the damages he sought. *Id.* at 260. At trial, the plaintiff testified that his marriage with his wife "was getting along much better," prompting the defendants to attempt to show the plaintiff a previously undisclosed letter that contained his wife's correspondence to her sister detailing the significant problems in her marriage. *Id.* at 260-61. Despite the plaintiff's arguments that such a last-minute disclosure of marital discord evidence was inappropriate, the district court accepted the defendants' arguments that the evidence was excepted from disclosure under Rule 26 as it constituted impeachment evidence contradicting the plaintiff's testimony about the quality of his marriage. *See id.* at 260-65.

On appeal, the First Circuit determined that the district court erred in deciding that the letter was excepted from disclosure under Rule 26(a) because while the letter may have served to contradict the plaintiff's testimony about his marriage, it *also* constituted substantive evidence as it tended "to establish the truth of a matter to be determined by the trier of fact"—the quality of plaintiff's marriage. *See id.* at 270. Accordingly, because the letter served both impeachment and substantive purposes, the First Circuit held that it fell outside the Rule 26(a)'s disclosure exception for evidence introduced "solely for impeachment purposes." *Id.*

4

I. **Plaintiffs' TIPS Evidence**

Plaintiffs' TIPS webpages evidence does not appear to serve the impeachment functions they allege. First, as Defendants point out, it is unclear how Plaintiffs' evidence that TIPS training can be done online and, in all states, reveals any "exaggerations and misstatements" within Mr. Gold and Mr. Fede's testimonies that their employees undergo TIPS training in-person. Nor is it clear how these witnesses' testimonies imply—as Plaintiffs assert—that out-of-state retailers cannot and do not provide their employees with alcohol server training. At most, Mr. Gold and Mr. Fede's testimonies highlight the potential difficulties that Rhode Island municipalities and officials would face in incentivizing out-of-state retailers to comply with Rhode Island laws regulating the alcohol delivery.[1] *See* ECF No. 127-19 ¶ 5; ECF No. 127-20 ¶¶ 4, 8.

Further, Plaintiffs' evidence illustrating that Rhode Island's TIPS training courses do not actually cover home deliveries does not impeach Mr. Gold and Mr. Fede's testimonies because they never asserted that the training specifically addresses home deliveries. Rather, the witnesses merely explained that their

---

[1] Mr. Fede explained that Rhode Island liquor retailers risk fines, liquor license suspension, or losing their liquor license—and thus their livelihood— if they do not follow Rhode Island alcohol laws. *See* ECF No. 127-20 ¶¶ 4, 8. Further, Mr. Fede noted that out-of-state retailers do not face these same risks if found noncompliant because they would not have a Rhode Island liquor license to revoke and are not under Rhode Island's jurisdiction, making effective enforcement actions difficult. *Id.* Mr. Gold's testimony echoes a similar sentiment. *See* ECF No. 127-19 ¶ 5. Overall, these witnesses' testimonies outline the skin-in-the-game that Rhode Island liquor retailers allege they have in complying with the law and do not appear to suggest that out-of-state retailers cannot and do not provide their employees with alcohol serving training.

employees who do deliver alcohol to homes utilize their TIPS training to prevent such deliveries from ending up in the wrong hands. *See* ECF No. 127-19 ¶ 2-3, ECF No. 127-20 ¶ 6.

Even if this Court were to find that Plaintiffs' TIPS webpage evidence did impeach Mr. Gold and Mr. Fede, Plaintiffs *also* used this evidence substantively in their Reply to Defendants Motion for Summary Judgment. Plaintiffs cite to the TIPS webpages to undermine Defendants' implied assertion that common carriers deliver wine to minors at a higher rate than employees of Rhode Island liquor retailers because the employees are TIPS certified and common carriers are not. ECF No. 132 at 15. Plaintiffs reference the TIPS webpages to highlight that Rhode Island TIPS training do not appear to cover home delivers, apparently to suggest that TIPS trained employees are not better equipped than common carriers to properly deliver wine to homes. *Id.*

The way the Plaintiffs use that evidence does not impeach any witness. Rather, the Plaintiffs offer the evidence to support their arguments that direct shipment of alcohol does not pose a greater threat to public health and safety than other methods of acquiring alcohol. *See id.* at 9. Whether common-carrier alcohol delivery threatens public health is relevant to an issue this Court could address on remand—i.e., the constitutionality of Rhode Island's common-carrier restriction on alcohol delivery.[2] *See Anvar v. Dwyer*, 82 F.4th 1, 12 (1st Cir. 2023). Thus, like the

---

[2] The First Circuit instructed this Court, on remand, to determine whether Rhode Island's common-carrier restriction is constitutional *if* this Courts finds Rhode Island's in-state-presence requirement for alcohol retailers unconstitutional. *Anvar*

letter in *Klonoski* tended to "to establish the truth of a matter to be determined by the trier of fact"—the nature of the plaintiff's marital relationship—the TIPS webpages tend "to establish to truth of a matter to be determined by the trier of fact"—whether Rhode Island's common-carrier restriction protects public health and safety. *Klonoski*, 156 F.3d at 270. Accordingly, the TIPS webpages that Plaintiffs offer fall within the bounds of substantive evidence and cannot operate *solely* to impeach as to allow it to be excepted from Rule 26 disclosure. *See id.*

## II. Plaintiffs' Google Search Evidence

Plaintiffs' new Google search evidence also does not serve any impeachment purposes that would except it from Rule 26 disclosure. This evidence is embedded in Attorney Tanford's Rebuttal Declaration, in which he stated that his Google searches produced no search results that revealed a safety recall of Flowers Chardonnay in 2018. ECF No. 133-1 ¶ 2. Plaintiffs assert that they offered this evidence to impeach by "casting doubt on the veracity" of defense witness Kenneth Mancini testimony declaring that there was a recall of Flowers Chardonnay in 2018 for quality reasons

---

*v. Dwyer*, 82 F.4th 1, 12 (1st Cir. 2023). If this Court must engage in that analysis, the First Circuit instructs this Court to determine whether Plaintiffs offered sufficient evidence proving that the common carrier restriction has a discriminatory effect or purpose, and if so, proceed to decide whether the restriction is an appropriate "exercise of Rhode Island's authority under the Twenty-first Amendment." *Id.* (citing *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2474–75 (2019)). The latter inquiry would prompt this Court to consider whether the challenged restriction addresses "alcohol related public health and safety issues." *Tennessee Wine*, 139 S. Ct. at 2474.

that his wholesale company managed to act on and prevent consumers from getting sick.³ ECF No. 144 at 2.

Contrary to their assertions, Plaintiffs did not use the Google search evidence to impeach Mr. Mancini's testimony about the recall. In fact, they apparently accepted the veracity of Mr. Mancini's testimony when they cited it for the proposition that there was a time when Flowers Chardonnay was "voluntarily recalled by its producer for 'quality' reasons." ECF No. 132 at 6. Plaintiffs referenced Mr. Mancini's testimony, not to impeach it, but to support their argument that there was evidence of a wine recall in Rhode Island only for "quality" purposes—not for health or safety purposes. *See id.* Plaintiffs cited their Google search evidence to hammer their point that there was no evidence that Flowers Chardonnay was recalled for *safety* purposes. *Id.* at n.3. Only now do Plaintiffs try to characterize Mr. Mancini's testimony as suggesting there was a health and safety recall for Flowers Chardonnay. But the reality is, Mr. Mancini never made a claim of such a health and safety recall for Plaintiffs to impeach. *See* 127-13 ¶ 11. Accordingly, because the Plaintiffs' Google search evidence served no impeachment purpose, it was not excepted from disclosure under Rule 26.

---

³ Plaintiffs' summary of Mr. Mancini's testimony is misleading as it suggests that Mr. Mancini asserted that his company's response to the Flowers Chardonnay recall prevented consumers from getting sick. But Mr. Mancini neither said or implied that the wine was recalled due to its potential of getting consumers sick nor did he declare that his acts of taking the recalled wine off the shelves prevented consumers from getting sick. *See* 127-13 ¶ 11.

8

### III. Sanctions for Plaintiffs' Failure to Supplement

Ultimately, Plaintiffs' new, undisclosed evidence was not offered solely for impeachment purposes, and thus they were required to timely supplement their discovery responses with such evidence under Rule 26(e). However, Plaintiffs did not timely supplement, leaving them subject to sanctions unless their failure was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). As the party facing sanctions, Plaintiffs bore the burden of proving that their "failure to comply with [Rule 26(e)] was either justified or harmless." *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001). But because Plaintiffs couched their arguments opposing this Motion to Strike on the erroneous premise that their new evidence was excluded from Rule 26 disclosure, they did not shoulder their burden.

The question now becomes what sanctions are appropriate here. Defendants ask the Court to exclude Plaintiffs nondisclosed evidence and to strike the portions of Plaintiffs' memorandum that rely on such evidence. That sanction request reflects Rule 37(c)(1) requirement of "near automatic exclusion of Rule 26 information that is not timely disclosed." *Wilson*, 250 F.3d at 21. Accordingly, the Court GRANTS the Defendants' Motion to Strike (ECF No. 142).

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

November 5, 2024.